**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL STUDENT LEGAL DEFENSE NETWORK, <br><br> 1015 15th Street NW, Suite 600 <br> Washington, D.C. 20005 <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, <br><br> 400 Maryland Avenue SW, <br> Washington, D.C. 20202 <br><br> Defendant. | Case No. 18-cv-1673 |

## COMPLAINT

1. Plaintiff National Student Legal Defense Network ("NSLDN") brings this action against the United States Department of Education ("ED" or "Department") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff NSLDN resides in and has its principal place of business in this District.

**PARTIES**

4. NSLDN is a non-partisan, non-profit organization incorporated in the District of Columbia. NSLDN's mission is to work, through a variety of means, to advance students' rights to educational opportunity and to ensure that higher education provides a launching point for economic mobility. To further its mission, NSLDN gathers information, including through responses to FOIA requests submitted to government agencies, in order to inform the public via, *inter alia*, its website, social media, press releases and other comments to the media, and regulatory comments to government agencies.

5. NSLDN has its principal place of business at 1015 15th Street NW, Suite 600, Washington, D.C., 20005, which is located within this District.

6. Defendant ED is a department of the executive branch of the United States government headquartered in Washington, D.C., and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). ED, in its current form, was created by the Department of Education Organization Act of 1979, 20 U.S.C. § 3401 *et seq*. ED has possession, custody, and control of the records that NSLDN seeks to obtain and which ED is unlawfully failing to disclose.

**STATEMENT OF FACTS**

*The Statutory and Regulatory Framework*

7. Under Section 498 of the Higher Education Act of 1965 (as amended), 20 U.S.C. §§ 1070 *et seq*. ("HEA"), for an institution of higher education to participate in the student financial assistance programs authorized by Title IV of the HEA (*e.g.*, Pell Grants and Federal Direct Loans), "the Secretary shall determine the . . . financial responsibility" of the institution. HEA § 498(a), 20 U.S.C. § 1099c(a). The Secretary makes this determination on the basis of whether the institution is able "(A) to provide the services described in its official publications and statements; (B) to provide

the administrative resources necessary to comply with the requirements of this subchapter; and (C) to meet all of its financial obligations." HEA § 498, 20 U.S.C. § 1099c(c)(1). The Secretary has also been directed by Congress to prescribe "ratios that demonstrate financial responsibility." HEA § 498(c)(2), 20 U.S.C. § 1099c(c)(2).

8. Under the HEA, if the Secretary determines that an institution has failed to meet certain statutory criteria, the Secretary shall nevertheless determine an institution to be financially responsible as long as the institution can meet one of a number of standards, including standards "prescribed by the Secretary" to demonstrate a level of financial strength. HEA § 498(c)(2), 20 U.S.C. § 1099c(c)(2).

9. The Department has promulgated regulations regarding financial responsibility. *See generally* 34 C.F.R. Part 668 Subpart L. These regulations further provide that an institution "must demonstrate to the Secretary that it is financially responsible" in order to participate in the Title IV, HEA programs. 34 C.F.R § 668.171(a).

10. The Department's regulations detail not only the general standards of financial responsibility, but also provide for an "alternative standard[]" for institutions that are not financially responsible under the "general standards." *Id.* § 668.175. The Department's standards also include a mechanism for calculating a ratio, or "composite score," that an institution must meet to be financially responsible under the general standards. *Id.* § 668.172.

11. One such alternative standard, for "new" institutions that are not financially responsible "solely because the Secretary determines that its composite score is less than 1.5," is for an institution to submit "an irrevocable letter of credit, that is acceptable and payable to the Secretary, for an amount equal to at least one-half of the amount of title IV, HEA program funds

3

that the Secretary determines the institution will receive during its initial year of participation." *Id.* § 668.175(b).

12. A second alternative standard, for "participating institutions," is for the institution to submit "an irrevocable letter of credit, that is acceptable and payable to the Secretary, for an amount determined by the Secretary that is not less than one-half of the title IV, HEA program funds received by the institution during its most recently completed fiscal year." *Id.* § 668.175(c).

13. In addition, "participating institutions" may utilize a third alternative standard, known as participating under a "provisional certification alternative," whereby the institution must "submit to the Secretary an irrevocable letter of credit that is acceptable and payable to the Secretary, for an amount to be determined by the Secretary that is not less than 10 percent of the title IV, HEA program funds received by the institution during its most recently completed fiscal year." *Id.* § 668.175(f). Institutions participating under this alternative must do so "for no more than three consecutive years" and must meet a number of additional requirements. *Id.*

14. For each of these alternative standards, the Secretary retains discretion to set the amount of the required letter of credit, so long as the amount is not set below the floor established by the regulation.

15. According to the Department's website, "[t]he most common reason why an institution is required to remit a letter of credit . . . is because they have a failing financial responsibility composite score (generally[,] a score of 1.4 or less on a scale of -1.0 to +3.0)." Fed. Student Aid, "Financial Responsibility Standards Requiring a Letter of Credit," U.S. Dep't of Educ., https://studentaid.ed.gov/sa/about/data-center/school/loc.

16. A letter of credit is a financial assurance from an institution that "help[s] cover federal costs if a school closes and students become eligible to have their federal student loans

forgiven." GAO Highlights, U.S. Gen. Accountability Office, *GAO-17-555, Higher Education – Education Should Address Oversight and Communication Gaps in its Monitoring of the Financial Condition of Schools* (2017), *available at:* https://www.gao.gov/assets/690/687225.pdf.

17.  Similarly, the Department has cited the requirement to submit a letter of credit as providing "financial protection . . . to help protect students, the Federal government, and taxpayers against potential institutional liabilities." *See, e.g.,* 81 Fed. Reg. 75,926, 75,935 (Nov. 1, 2016). For example, the Department has required institutions to post letters of credit in situations in which the Department has determined that an event or series of events indicates a heightened risk to taxpayer interests, including as part of the approval process when institutions seek to change ownership. The Department has also required letters of credit as part of settlements of enforcement actions brought by the Department pursuant to 34 C.F.R. Part 668, Subpart G.

18.  In 2016, the Department published a final rule that, *inter alia*, established a series of financial triggers (the "2016 Financial Triggers") that, when tripped, would require an institution to submit a letter of credit preemptively. *See* 81 Fed. Reg. at 76,073-75 (describing triggers that include debts and borrower defense-related lawsuits, other types of lawsuits, adverse accrediting agency actions, possible loss of gainful employment program eligibility, withdrawal of owner's equity, a violation of the 90-10 rule, Securities Exchange Commission ("SEC") actions, failure to file SEC reports, exchange actions, issues with cohort default rates, problems with audits, and other discretionary factors or events).

19.  The Department later delayed the implementation of the 2016 Financial Triggers on three separate occasions, most recently until July 1, 2019. *See* 83 Fed. Reg. 6459 (Feb. 14, 2018); *see also* 82 Fed. Reg. 49,114 (Oct. 24, 2017), 82 Fed. Reg. 27,621 (June 16, 2017). The Secretary's

reason for doing so was to "allow adequate time to conduct negotiated rulemaking and develop revised regulations." 83 Fed. Reg. at 6459.

20. As part of the 2017-2018 Negotiated Rulemaking for Borrower Defense and Financial Responsibility (the "Borrower Defense Negotiated Rulemaking"), the Department considered changes to the circumstances in which institutions of higher education will be required to post letters of credit, as well as changes to the form of financial surety to be posted. For example, the Department released (in connection with and prior to Session 1 in November 2017), an issue paper that stated: "[I]f the Department decides to promulgate regulations requiring institutions to bear financial responsibility for borrower defense claims, it may also be necessary to require that institutions post sureties in some instances to ensure that the taxpayers are not solely responsible for borrower defense loan discharges stemming from the institution's unlawful acts." U.S. Dep't of Educ., Issue Paper 3: Financial Responsibility and Administrative Capability (2017), *available at:* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html.

21. According to information publicly available at www.reginfo.gov for the Borrower Defense Rulemaking, through a Notice of Proposed Rulemaking, and ultimately, a final rule, the Secretary "may amend other sections of the Direct Loan Program regulations, including . . . the Student Assistance General Provisions regulations providing the financial responsibility standards . . . for schools." U.S. Dep't of Educ., *RIN 1840-AD26, Borrower Defense and Related Issues* (2018), *available at:*
https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201804&RIN=1840-AD26.

22. As of the filing of this Complaint, a draft of the NPRM is currently being reviewed by the Office of Information and Regulatory Affairs at the Office of Management and Budget, pursuant to Executive Order 12,866. *Id.*

23. As recently as this month, the Department has stated that it anticipates publishing final regulations as part of the Borrower Defense Rulemaking on or before November 1, 2018.

***NSLDN's FOIA Request***

24. On March 21, 2018, NSLDN submitted a FOIA request to ED for information related to letters of credit. A true and correct copy of that request (hereinafter the "FOIA Submission") is attached hereto as Exhibit 1. The FOIA Submission sought:

   a. "A copy of every letter of credit currently held by the Department that has been posted by, or on behalf of, any institution participating in one or more Title IV, HEA programs" (hereinafter "Request 1");

   b. "A copy of every communication from the Department wherein the Department requested or demanded an institution to post a letter of credit that is currently held by the Department" (hereinafter "Request 2").

25. NSLDN's FOIA Submission also stated that "[t]o the extent this request is unduly burdensome on the Department, . . . NSLDN would be willing to accept a detailed log in lieu of the documents themselves," as long as the log contained certain information.

26. One of the purposes of NSLDN's FOIA Submission was to obtain and review the letters of credit in the Department's possession, the amounts of the letters of credit requested by the Department, and the reasons for the letters of credit (as conveyed in the communications between the Department and an institution of higher education) in advance of the public comment period for the 2018 proposed Borrower Defense Rule. The information sought in the FOIA Submission would have allowed NSLDN to meaningfully comment on the likely proposed changes to the financial responsibility standards, including the alternative standards whereby institutions are required to post letters of credit. In the FOIA Submission, NSLDN expressly highlighted, as "Background" to the

request, the discussions of the financial responsibility standards in the Borrower Defense Negotiated Rulemaking, including the "circumstances in which institutions of higher education will be required to post letters of credit and also the form of financial surety required to be posted." *See* Exhibit 1 at 2.

27. On March 22, 2018, ED acknowledged its receipt of the FOIA Submission, stated that it had "forwarded [the request] to the primary responsible office(s) for action," and assigned tracking number 18-01340-F. ED also granted NSLDN's request for a fee waiver. A true and correct copy of that communication is attached hereto as Exhibit 2.

28. On April 19, 2018, NSLDN requested an update from the Department via email about the status of the FOIA Submission. The next day, NSLDN received a reply email from EDFOIAManager@ed.gov informing NSLDN that the search for responsive records to the FOIA Submission had not yet been completed. A true and correct copy of those communications are attached hereto as Exhibit 3.

29. On April 23, 2018, NSLDN received an email from the Department indicating that it had "some information" to send and requesting clarification on NSLDN's mailing address. NSLDN provided the mailing address that same day. A true and correct copy of those communications are attached hereto as Exhibit 4.

30. On April 24, 2018, NSLDN received another email from the Department, attaching a final response letter (hereinafter the "Final Response"). A true and correct copy of the Final Response is attached hereto as Exhibit 5.

31. In response to both of the FOIA Submission's requests, the Department stated that "[s]taff in [Federal Student Aid] informed the FOIA Services Center that they have no documents that are responsive to your request." In the very next sentence, however, the Department claimed

that "[t]he first two (2) elements of this request are 1) prohibitively burdensome and expensive." The Department then offered, "[i]n an effort to promote transparency," to "proactively release[]" a detailed log of Fiscal Year ("FY") 2016 letters of credit on its website at some point "this summer."

32. As part of a separate FOIA request, assigned tracking number 18-01800-F, NSLDN requested and received in early June 2018 a log showing all FOIA requests, both open and closed, received by the Department between October 1, 2017 and May 11, 2018. The log provided by the Department pursuant to Request No. 18-01800-F indicated that the Department's response to the FOIA Submission was "closed" on April 24, 2018 with a "Final Disposition" of "Other Reasons – No records."

33. On May 1, 2018, NSLDN sent an email to the Department attaching an administrative appeal of ED's Final Response to NSLDN's FOIA Submission (hereinafter the "Appeal"). A true and correct copy of the Appeal is attached hereto as Exhibit 6.

34. The Appeal asserted that ED had not provided NSLDN with information to show that it had conducted a search reasonably calculated to uncover records responsive to the FOIA Submission. The Appeal also asserted that ED had failed to demonstrate how producing the requested records would be "prohibitively burdensome" to the agency, particularly given the statement that the Department's search revealed "no documents" that were responsive to the request. Finally, the Appeal made clear that ED's offer to provide a detailed log of letters of credit held by the Department in FY 2016 was not responsive to NSLDN's request for letters of credit currently held by the agency.

35. The Appeal also asserted that the Department's statement that there were "no documents that are responsive to this request" was in stark contrast to numerous examples in the public record, as recently as March 2018 and April 2018, of institutions noting (including in filings

with the U.S. Securities and Exchange Commission) the existence of letters of credit on file with the Department.

36.     NSLDN did not receive any confirmation that the Department had received the Appeal.  Accordingly, on June 12, 2018, NSLDN requested an update from the Department via email about the status of its Appeal.  The next day, NSLDN received a reply email from EDFOIAappeals@ed.gov acknowledging ED's receipt of the Appeal on May 2, 2018 and stating that it had been "forwarded to the primary responsible office(s) for action."  A true and correct copy of those communications are attached hereto as Exhibit 7.

37.     As of the filing of this Complaint, NSLDN has not received a determination with respect to the Appeal.

38.     On its website (https://ed.gov/policy/gen/leg/foia/foiatoc.html), ED posts status logs regarding FOIA requests and administrative appeals.  As of the filing of this Complaint, those logs have not been updated since March 8, 2018, *i.e.*, before the FOIA Submission or Appeal were submitted.

*Exhaustion of Administrative Remedies*

39.     ED has failed to (a) notify NSLDN of a final determination regarding its Appeal; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

40.     Through ED's failure to respond to the Appeal within the time period required by law, NSLDN has constructively exhausted its administrative remedies and seeks judicial review.

## COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Search for Responsive Records with respect to NSLDN's FOIA Submission

41. NSLDN repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

42. Through the FOIA Submission, NSLDN properly requested records within the possession, custody, and control of ED.

43. ED is an agency subject to FOIA and it must, therefore, make reasonable efforts to search for requested records.

44. ED has failed to promptly review agency records for the purpose of locating those records that are responsive to the FOIA Submission. In this regard, ED has failed to conduct an adequate search.

45. ED's failure to conduct adequate searches for responsive records violates FOIA.

46. NSLDN is therefore entitled to declaratory and injunctive relief requiring ED to promptly make reasonable efforts to search for records responsive to the FOIA Submission.

## COUNT II
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Records with respect to NSLDN's FOIA Submission

47. NSLDN repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

48. Through the FOIA Submission, NSLDN properly requested records within the possession, custody, and control of ED.

49. ED is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

50. ED is wrongfully withholding non-exempt records requested by NSLDN by failing to produce records responsive to the FOIA Submission.

51. ED's failure to provide all non-exempt responsive records violates FOIA.

52. NSLDN is therefore entitled to declaratory and injunctive relief requiring ED to promptly produce all non-exempt records responsive to the FOIA Submission and provide an index justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, NSLDN respectfully requests the Court to:

(1) Order ED to conduct a search or searches reasonably calculated to uncover all records responsive to NSLDN's FOIA request;

(2) Order ED to produce, by such date as the Court deems appropriate, any and all non-exempt records responsive to NSLDN's FOIA request and an index justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin ED from continuing to withhold any and all non-exempt records responsive to NSLDN's FOIA request;

(4) Award NSLDN attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); *and*

(5) Grant NSLDN such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ *Martha U. Fulford*
Martha U. Fulford (D.C. Bar 1011954)
National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
martha@nsldn.org
(202) 734-7495

Dated: July 16, 2018